STATE of Minnesota, Respondent,

v.

Joe Anthony Darnell ELLIS-STRONG, Appellant.

A16-1260

Court of Appeals of Minnesota.

Filed June 19, 2017

Lori Swanson, Attorney General, St. Paul, Minnesota; and John Choi, Ramsey County Attorney, Adam E. Petras, Assistant County Attorney, St. Paul, Minnesota (for respondent).

Cathryn Middlebrook, Chief Appellate Public Defender, Michael McLaughlin, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Worke, Presiding Judge; Ross, Judge; and Kirk, Judge.

## OPINION

KIRK, Judge

Appellant Joe Anthony Darnell Ellis-Strong challenges his conviction of first-degree criminal sexual conduct, arguing that the district court erred in denying his presentence motion to withdraw his guilty plea because he was denied effective assistance of counsel. Because Ellis-Strong's trial counsel affirmatively misadvised him concerning the length of the predatory-offender registration period, we conclude that counsel's performance fell below an objective standard of reasonableness. We reverse, because if Ellis-Strong can successfully show ineffective assistance of counsel, his guilty plea would be manifestly unjust. However, because it is unclear from the record if Ellis-Strong was prejudiced, we remand for a postconviction hearing.

## FACTS

In September 2015, Ellis-Strong was charged with first-degree criminal sexual conduct (CSC), in violation of Minn. Stat. § 609.342, subd. 1(a) (2014), because of an incident of sexual penetration of a minor, alleged to have occurred in December 2014.

Trial was scheduled for March 8, 2016. Instead of going to trial on March 8, Ellis-Strong entered a "straight plea" of guilty to the first-degree CSC charge without a plea agreement with the state. Ellis-Strong understood that while there was no plea agreement, he would be able to argue for a downward durational departure at sentencing and the state would seek a guidelines sentence of 180 months.

During the plea colloquy, Ellis-Strong's trial counsel asked: "And you know that you will have to register as a sex offender for 10 years as well?" Ellis-Strong replied, "Yes."

At his sentencing hearing, Ellis-Strong moved to withdraw his guilty plea. The basis for the motion, according to Ellis-Strong's trial counsel, was that

at the time of the plea, Mr. Ellis-Strong was told by me and by the State, there was lengthy conversation about the length of his [predatory-offender] registration period. Everyone thought it was 10 years. That's what he was told. That's what he believed. That's what he understood. Since that time we learned that we were all wrong. We understand the status of the case law, which says that registration is a collateral issue. And usually in those cases the court is talking about whether the Defendant had to register or not. This case is a little different because he was advised. There is no question that he was going to register. The question was the length of time.

Ellis-Strong's trial counsel stated that based on the inaccurate advice concerning the length of the registration period, Ellis-Strong was denied the opportunity to "at least negotiate pleading guilty under a different section under [the CSC statute], which would have required 10 years [of registering]." The state responded that (1) Ellis-Strong made a straight plea, without a plea agreement, and (2) the registration matter was "collateral" according to established caselaw. Ellis-Strong's trial counsel conceded that Minnesota caselaw viewed predatory-offender registration as a collateral consequence, but stated that there is no caselaw addressing whether the length of the registration period would fall under a reason or basis to withdraw a plea.

The district court denied the motion, finding that the plea was entered knowingly with a written plea petition and that Ellis-Strong entered the plea of his own free will after having sufficient time to consult with his attorney. The district court granted a downward durational de-

parture and imposed a 147-month sentence.

Ellis-Strong now appeals.

## ISSUE

Did counsel's affirmative misadvice concerning predatory-offender registration amount to ineffective assistance of counsel, rendering Ellis-Strong's guilty plea constitutionally invalid and manifestly unjust?

## ANALYSIS

Ellis-Strong argues that the district court erred in denying his motion to withdraw his guilty plea because he was denied effective assistance of counsel before the entry of his plea. Ellis-Strong contends, specifically, that (1) his trial counsel affirmatively misadvised him as to the collateral consequences of his guilty plea, (2) his trial counsel's failure to investigate the law constituted ineffective assistance of counsel, and (3) such ineffective assistance of counsel constituted a "manifest injustice," under Minn. R. Crim. P. 15.05, subd. 1, and, therefore, the less demanding presentence "fair-and-just" standard under rule 15.05, subdivision 2, was satisfied as a matter of law, requiring the district court to allow withdrawal of his plea.

 The ultimate decision to allow a defendant to withdraw a guilty plea is left to the sound discretion of the district court, "and it will be reversed only in the rare case in which the appellate court can fairly conclude that the [district] court abused its discretion." *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989). Although Ellis-Strong alleges the district court "erred" in denying his motion to withdraw his plea, Ellis-Strong is alleging ineffective assistance of counsel for the first time on direct appeal. Generally, an ineffective-assistance-of-counsel claim should be raised in a postconviction petition for relief, rather than on direct appeal, because an evi-

dentiary hearing, if granted, provides the district court with additional facts to explain the parties' decisions. *State v. Gustafson*, 610 N.W.2d 314, 321 (Minn. 2000). But, "[w]hen a claim of ineffective assistance of trial counsel can be determined on the basis of the trial record, the claim must be brought on direct appeal." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013). Because Ellis-Strong brings an ineffective-assistance-of-counsel claim on direct appeal, we do not apply the "abuse-of-discretion" standard of review. Instead, if the ineffective-assistance-of-counsel claim is properly before us, we examine the claim under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Andersen*, 830 N.W.2d at 10.

Ellis-Strong's claim requires us to consider: (1) whether the two-prong test in *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064, is applicable to Ellis-Strong's assertion that his trial counsel affirmatively misadvised him of a collateral consequence of his guilty plea; (2) if applicable, whether under the *Strickland* test Ellis-Strong showed his counsel was ineffective; and (3) whether a showing of ineffective assistance of counsel in the context of a guilty plea demonstrates a "manifest injustice," under Minn. R. Crim. P. 15.05, subd. 1, thereby meeting the less demanding "fair-and-just" plea-withdrawal standard under rule 15.05, subdivision 2, as a matter of law.

**Applicability of *Strickland* to Misadvice Regarding Collateral Consequences**

 The Sixth Amendment to the United States Constitution guarantees a defendant a right to effective assistance of counsel, even "[b]efore deciding whether to plead guilty." *Padilla v. Kentucky*, 559 U.S. 356, 364, 130 S.Ct. 1473, 1480-81, 176 L.Ed.2d 284 (2010). "A defendant's guilty plea may be constitutionally invalid if the

defendant received ineffective assistance of counsel." *Sames v. State*, 805 N.W.2d 565, 567 (Minn.App. 2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994)). To show ineffective assistance of counsel in the context of a guilty plea, the defendant must demonstrate (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Campos v. State*, 816 N.W.2d 480, 486 (Minn. 2012) (quotations omitted); *see Hill*, 474 U.S. at 59, 106 S.Ct. at 370.

In considering ineffective-assistance-of-counsel claims, appellate courts make a distinction between a "direct" and "collateral" consequence stemming from a guilty plea. *Taylor v. State*, 887 N.W.2d 821, 823-24 (Minn. 2016); *Sames*, 805 N.W.2d at 567-68. "Direct consequences are those that have a definite, immediate and automatic effect on the range of a defendant's punishment," while "[c]ollateral consequences, on the other hand, are not punishment but, rather, are civil and regulatory in nature and are imposed in the interest of public safety." *Sames*, 805 N.W.2d at 568 (quotations omitted). In Minnesota, an attorney's representation does not fall below the objective standard of reasonableness required by the Sixth Amendment if the attorney fails to inform a defendant of the collateral consequences of a guilty plea. *Id.* Most federal circuit courts and numerous state appellate courts follow this rule. *Id.*

In Minnesota, the requirement to register as a predatory offender is a collateral consequence of a guilty plea. *Taylor*, 887 N.W.2d at 823-24. In *Taylor*, the defendant moved postsentencing to withdraw his guilty plea, which required him to register as a predatory offender, claiming his counsel was ineffective and his plea was not intelligent and was invalid because his attorney never informed him of the registration requirements. *Id.* at 822. The Minnesota Supreme Court held in *Taylor* that because of the collateral nature of the predatory-offender registration requirements, a defense attorney's failure to inform a defendant about these requirements before the defendant enters a guilty plea does not violate a defendant's right to effective assistance of counsel under the United States and Minnesota Constitutions. *Id.* at 826.

The state relies on *Taylor*, as well as an unpublished opinion from this court, as support for its argument that Ellis-Strong's trial counsel cannot be ineffective for misadvising Ellis-Strong of a collateral consequence. This case, however, is different from *Taylor* in the following respects: (1) the record shows that Ellis-Strong's trial counsel did not merely fail to advise him of a collateral consequence, but affirmatively misadvised him; (2) Ellis-Strong may have relied on trial counsel's misadvice in pleading guilty; and (3) Ellis-Strong moved to withdraw his plea before sentencing, triggering the less stringent "fair-and-just" standard under Minn. R. Crim. P. 15.05, subd. 2. The unpublished opinion cited by the state is also distinguishable because it involved a failure to advise, rather than misadvice, and no evidence in the record established that the appellant relied on representations by defense counsel regarding the registration period when entering his guilty plea.

This court held in *State v. Brown*, 896 N.W.2d 557, 558-59, 2017 WL 1833317, at *1 (Minn. App. May 8, 2017), that an attorney's affirmative misadvice to a client concerning collateral consequences does not, on its own, render a guilty plea unintelligent and manifestly unjust. But in *Brown*,

the appellant did not make an ineffective-assistance-of-counsel claim. 896 N.W.2d at 562–63, 2017 WL 1833317, at *5. As a result, this court explicitly limited its review to whether the plea was rendered unintelligent and did not address the cases cited by Brown that discuss affirmative misadvice in the context of an ineffective-assistance-of-counsel claim. *Id.*

Further, because Ellis-Strong is claiming his plea is invalid because of ineffective assistance of counsel, rather than on the basis his plea was unintelligent, different concerns are at issue in this case than in *Brown*. In *Brown*, this court refused to adopt a categorical rule that affirmative misadvice concerning collateral consequences renders a guilty plea unintelligent and manifestly unjust because such a rule "would require plea withdrawals for misadvice even about collateral consequences of little significance with possibly no effect on the defendant's decision to plead guilty." *Id.* In contrast, if a defendant alleges ineffective assistance of counsel in a motion to withdraw a plea, the collateral consequence would be required to be significant, because under a *Strickland* analysis, a defendant would need to show prejudice. *Campos*, 816 N.W.2d at 486.

Ellis-Strong relies on *Barragan v. State*, 583 N.W.2d 571, 572 (Minn. 1998), *Kochevar v. State*, 281 N.W.2d 680, 687 (Minn. 1979), and an unpublished opinion from this court, *State v. Levkovich*, No. C4-03-232, 2003 WL 21694582, at *3-4 (Minn. App. July 22, 2003), *review denied* (Minn. Sept. 24, 2003), for the proposition that this court has recognized that misadvice concerning a collateral consequence may provide a basis for a plea withdrawal. But, *Barragan* does not involve an ineffective-assistance-of-counsel claim, and as a factual matter, the supreme court determined that Barragan's attorney informed him on the record that he did not know whether Barragan could be deported, and Barragan nonetheless chose to plead guilty.[1] 583 N.W.2d at 572. *Kochevar* is also inapposite as it involved a promise in a plea bargain, and here there was no plea bargain. 281 N.W.2d at 687. Because of the paucity of caselaw in Minnesota on this issue, we note that this court in *Levkovich* examined the *Strickland* factors in reference to whether the appellant's counsel was ineffective for providing misadvice on a collateral consequence. 2003 WL 21694582, at *4. Unpublished opinions are not precedential, but they may have persuasive value. Minn. Stat. § 480A.08, subd. 3 (2016); *City of St. Paul v. Eldredge*, 788 N.W.2d 522, 526-27 (Minn. App. 2010), *aff'd*, 800 N.W.2d 643 (Minn. 2011). *Levkovich* suggests that counsel's misadvice concerning a collateral consequence of a guilty plea could form the basis for an ineffective-assistance-of-counsel claim under the *Strickland* test. 2003 WL 21694582, at *4. This court declined to find ineffective assistance of counsel, though, as it remanded the case to give appellant an opportunity to show he was affirmatively misadvised. *Id.*

We also find it persuasive that various state appellate courts follow an affirmative-misadvice exception to the general rule that a counsel's failure to advise a client of a collateral consequence of a plea

1. At the time of *Barragan* and *Levkovich*, the Minnesota Supreme Court in *Alanis v. State*, 583 N.W.2d 573, 578 (Minn. 1998), had held that an attorney has no duty to advise a client about the possibility of deportation as a result of pleading guilty because deportation was a collateral consequence. That holding was abrogated by the United States Supreme Court in *Padilla*, 559 U.S. at 366, 130 S.Ct. at 1482 (concluding that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel). However, the reasoning in cases involving affirmative misadvice about deportation, which was then considered collateral, is still instructive.

cannot be deemed ineffective assistance of counsel. *See, e.g., People v. Correa*, 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307, 312 (1985) (finding, pre-*Padilla*, that erroneous advice of counsel that guilty plea would not result in deportation was objectively unreasonable performance); *Meier v. State*, 337 N.W.2d 204, 207 (Iowa 1983) (determining that a court, or an attorney, is not free to misinform a defendant regarding collateral consequences of his plea); *Pettis v. State*, 212 S.W.3d 189, 194 (Mo. Ct. App. 2007) (recognizing that the distinction between direct and collateral consequences breaks down and a different rule applies where counsel misinforms a client regarding a particular consequence); *State v. Sharkey*, 155 N.H. 638, 927 A.2d 519, 523 (2007) ("[W]here the client asks for advice about a 'collateral consequence' and relies upon it in deciding whether to plead guilty, the attorney must not grossly misinform his client about the law." (quotation omitted)); *State v. Stowe*, 71 Wash.App. 182, 858 P.2d 267, 269 (1993) (finding "[d]ifferent considerations may arise when counsel affirmatively misinforms the defendant of the collateral consequences of a guilty plea" (alteration in original) (quotation omitted)); *see generally* Jenny Roberts, *Ignorance Is Effectively Bliss: Collateral Consequences, Silence, and Misinformation in the Guilty-Plea Process*, 95 Iowa L. Rev. 119, 140 (2009) (noting the "affirmative-misadvice" exception to the collateral-consequence rule is well established in state and federal courts).

Federal courts also recognize an affirmative-misadvice exception. For example, in *Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir. 1979), the Fourth Circuit determined:

> Here, though parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel.

Since *Strader*, other circuits have confirmed that affirmative misadvice on parole eligibility, although only a collateral consequence, may amount to ineffective assistance. *See, e.g., Beavers v. Saffle*, 216 F.3d 918, 925 (10th Cir. 2000) (adopting the rule in *Strader*); *Hill v. Lockhart*, 894 F.2d 1009, 1010 (8th Cir. 1990) (determining that counsel's misinformation about parole eligibility, and the client's explicit reliance on the information in pleading guilty, rendered the erroneous advice ineffective assistance of counsel); *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989) (adopting the rule in *Strader*).

The state argues that the federal cases cited by Ellis-Strong are inapposite because parole is not a collateral consequence but rather a direct consequence of a plea. However, federal caselaw regards parole eligibility as collateral. *See, e.g., Hill v. Lockhart*, 731 F.2d 568, 570 (8th Cir. 1984), *aff'd*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Strader*, 611 F.2d at 65. Further, in some federal courts of appeals, the affirmative-misadvice exception was extended to other collateral consequences, most commonly deportation, before *Padilla* removed deportation from collateral-versus-direct classification. *See, e.g., United States v. Kwan*, 407 F.3d 1005, 1015-17 (9th Cir. 2005) (ruling "affirmative misrepresentations" by counsel regarding deportation consequences that are collateral to a guilty plea may constitute ineffective assistance of counsel); *United States v. Couto*, 311 F.3d 179, 188 (2d Cir. 2002) ("[A]n affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable."); *United States v. Russell*, 686 F.2d 35, 41 (D.C. Cir. 1982) ("The govern-

ment may not be required to inform defendants of collateral plea consequences ... but it does have an obligation not to mislead them."), *abrogated in part by Padilla*, 559 U.S. 356, 130 S.Ct. 1473.

■ In sum, even though predatory-offender registration is a collateral consequence of a guilty·plea, affirmative misadvice about such consequences may amount to ineffective assistance of counsel if the *Strickland* factors are met.[2]

### Ineffective Assistance of Counsel

Ellis-Strong asserts that he was denied effective assistance of counsel before entering his guilty plea, requiring us to vacate his conviction and allow him to withdraw his guilty plea.

### *Performance Prong*

■ Ellis-Strong argues that his trial counsel's performance was deficient because his attorney did not investigate the law regarding the consequences for Ellis-Strong's conviction, and his attorney gave Ellis-Strong incorrect advice that he faced ten years of registering as a predatory offender, when he actually faced lifelong registration. We agree.

■ Under *Strickland*, Ellis-Strong must show that trial counsel's representation fell below an objective standard of reasonableness. 466 U.S. at 687-88, 104

S.Ct. at 2064; *Campos*, 816 N.W.2d at 486. Whether an attorney's performance is objectively unreasonable is "necessarily linked to the practice and expectations of the legal community: The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Padilla*, 559 U.S. at 366, 130 S.Ct. at 1482 (quotation omitted). Prevailing norms of practice as reflected in the American Bar Association (ABA) standards "are guides to determining what is reasonable." *Id.* (quotation omitted). The ABA's standards provide that, defense counsel should conduct relevant. legal research and should "identify, and advise the client of, collateral consequences that may arise from charge, plea or conviction." ABA, *supra* note 2, §§ 4-1.3, -4.6, -5.4.

■ An attorney's "mistake of law" because of a failure to look up a statute may amount to an objectively unreasonable performance. For example, in *Hinton v. Alabama*, the Supreme Court found that counsel's performance was objectively unreasonable where counsel mistakenly believed that under a state statute his indigent client would only be able to receive a maximum of $1,000 for a qualified defense expert, and where counsel "failed to make even the cursory investigation of the state statute." —— U.S. ——, 134 S.Ct. 1081, 1088-89, 188 L.Ed.2d 1 (2014). Likewise, in

---

2. We are aware that one criticism of the affirmative-misadvice exception is that it could create an incentive for defense counsel to remain silent on collateral consequences while advising clients, when accurate information is readily available. *See Padilla*, 559 U.S. at 369-70, 130 S.Ct. at 1484 (deciding not to merely hold that *Strickland* applies to Padilla's claim "only to the extent that he has alleged affirmative misadvice," because of the future possibility defense counsel may withhold information on important matters deemed collateral); *see also* Roberts, *supra*, at 140 (arguing that the affirmative-misadvice exception promotes silence). However, the af-

firmative-misadvice exception does not·do away with prevailing norms of practice as reflected in the American Bar Association's (ABA) standards, which state that defense counsel have a duty to advise clients· of collateral consequences that may arise from a conviction. ABA, *Criminal Justice Standards for the Defense Function* § 4-5.4 (4th ed. 2015). Further, when defense counsel provides advice on the collateral consequences of a plea, the affirmative-misadvice exception discourages counsel from providing incorrect information, upon which a defendant may·rely when pleading guilty.

*Padilla*, the Supreme Court noted that the terms of the relevant immigration statute were "succinct, clear, and explicit," in defining the removal consequences of Padilla's conviction. 559 U.S. at 368-69, 130 S.Ct. at 1483. The Court determined that because counsel could have easily determined the effects of the plea from reading the text of the statute, counsel had a duty to give correct advice. *Id.*

Like the statute at issue in *Padilla*, the predatory-offender registration statute here is succinct, clear, and explicit. Ellis-Strong pleaded guilty to first-degree CSC under Minn. Stat. § 609.342, subd. 1(a). The statute governing registration of predatory offenders, Minn. Stat. § 243.166, subd. 6(d)(3) (2014), clearly states under the heading "Registration period," that a person shall comply with the registration requirements for life if the person is required to register based on a conviction under Minn. Stat. § 609.342, subd. 1(a). As Ellis-Strong notes, despite the clarity in the statute, his attorney misadvised him that he was only required to register for ten years. Further, the record shows that counsel had a "lengthy conversation about the length of [Ellis-Strong's] registration period" with the state and Ellis-Strong. Counsel's failure to take a moment to look up the applicable statute while giving advice is objectively unreasonable under *Hinton, Padilla,* and the ABA standards.

Because Ellis-Strong's trial counsel provided affirmative misadvice concerning the length of his registration period as a predatory offender, and the statute is succinct and clear, trial counsel's performance was objectively unreasonable.

### Prejudice Prong

■■■■ In the context of a plea withdrawal, Ellis-Strong can show prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insist-ed on going to trial." *Campos*, 816 N.W.2d at 486 (citing *Hill*, 474 U.S. at 59, 106 S.Ct. at 370). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Ellis-Strong argues he was prejudiced by his trial counsel's affirmative misadvice because there is a reasonable probability that had counsel correctly advised him about the lifelong registration period he would not have pleaded guilty. This argument has merit. At sentencing, Ellis-Strong's attorney stated she had a lengthy conversation with Ellis-Strong (and the state) about the length of his registration. This shows the registration period was a concern for Ellis-Strong. The very fact that Ellis-Strong made the motion to withdraw his plea before sentencing is evidence that shows that Ellis-Strong likely understood that he would go to trial if the motion was granted.

However, the record evidence is insufficient for us to determine whether Ellis-Strong was prejudiced by his attorney's misadvice. The motion to withdraw the plea was first brought orally at sentencing, and facts fully explaining the reasons for Ellis-Strong's decision to plead guilty were not fully developed. Ellis-Strong never submitted an affidavit or testified that he would not have pleaded guilty but for the misadvice. The Supreme Court in *Hill* determined that to show prejudice a habeas petitioner needed to "allege special circumstances that might support the conclusion that he placed particular emphasis on" the collateral consequence in deciding whether to plead guilty. 474 U.S. at 60, 106 S.Ct. at 371. The district court made a finding based on its notes that Ellis-Strong "knew what he was doing" in pleading guilty, but the district court provided no details or explanation supporting its finding.

Accordingly, we reverse and remand this case for a postconviction evidentiary hearing so that the district court can determine whether Ellis-Strong can show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See State v. Danh*, 516 N.W.2d 539, 544 (Minn. 1994) (remanding for a postconviction hearing where record was insufficient to determine whether guilty plea was involuntary, requiring plea withdrawal).

**Plea-Withdrawal Standard on Remand**

"A criminal defendant has no absolute right to withdraw a guilty plea once entered." *Perkins v. State*, 559 N.W.2d 678, 685 (Minn. 1997). But, at any time, before or after sentencing, a district court must allow a defendant to withdraw a guilty plea if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. Because ineffective assistance of counsel may render a plea constitutionally invalid, *Sames*, 805 N.W.2d at 567, and "[a] manifest injustice exists if a guilty plea is not valid," *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010), a guilty plea based on ineffective assistance of counsel creates a manifest injustice as a matter of law.

Therefore, on remand, if the district court finds that Ellis-Strong has shown that he was prejudiced by counsel's misadvice, thereby making a successful claim for ineffective assistance of counsel, Ellis-Strong has demonstrated a "manifest injustice" as a matter of law. Because the fair-and-just standard is less demanding than the manifest-injustice standard, *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007), if Ellis-Strong shows his plea is invalid, he has shown both a manifest injustice and a fair-and-just reason to withdraw his plea as a matter of law. If this is the case, Ellis-Strong would be entitled to withdraw his plea, and the district court need not exam-ine any prejudice to the prosecution caused by the plea withdrawal, as that factor is only considered under the discretionary fair-and-just standard. Minn. R. Crim. P. 15.05, subd. 2; *Danh*, 516 N.W.2d at 544.

**DECISION**

We reverse and remand because (1) trial counsel's performance in providing affirmative misadvice on a collateral consequence of Ellis-Strong's guilty plea fell below an objective standard of reasonableness and may have amounted to ineffective assistance of counsel, (2) the record is insufficient for us to determine if Ellis-Strong can show but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial, and (3) ineffective assistance of counsel, if shown, would render Ellis-Strong's guilty plea manifestly unjust, requiring the district court to allow Ellis-Strong to withdraw his plea.

**Reversed and remanded.**